**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MICHAEL R. ROUSE, #73435-004,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **3:14-CV-0981-M-BK** |
| | § | **(3:09-CR-0113-M)** |
| **UNITED STATES OF AMERICA,** | § | |
| **Respondent.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner's *pro se* motion to vacate sentence under 28 U.S.C. § 2255 was referred to the United States Magistrate Judge.  For the reasons that follow, the motion should be denied.

**I. BACKGROUND**

From early 2003 until July 2004, Petitioner and co-conspirator James Testa formed and operated the Golden Gate Real Estate Investment Trust (GGREIT), which was marketed by independent insurance agents as a safe investment in real estate and real estate-related investments, backed by government mortgages, with rates of return of about 15 percent.  Doc. 104-1 at 2-3 (Presentence Report).   Beginning in August 2003, however, Petitioner and Testa invested GGREIT's investor funds in a foreign exchange program with James Fulbright's son, Eric Fulbright, who ultimately lost the entire amount.  Doc. 104-1 at 6.  Despite this, Testa and Petitioner are alleged to have misled investors with false statements of return, sought additional investors, continued to divert investors' funds for personal use and, ultimately, falsely informed investors that they had transferred control of the GGREIT to a new trustee.  Doc. 104-1 at 7.

Petitioner was subsequently indicted on various fraud and money laundering charges. Doc. 1; Doc. 51.  After a seven-day jury trial, Petitioner was found guilty of one count of

conspiracy to commit securities fraud, mail fraud and money laundering, two counts of securities fraud, five counts of mail fraud, and one count of money laundering. He absconded before sentencing, however, and the Count sentenced him *in absentia* to 210 months' imprisonment (which included an obstruction of justice enhancement), $1,968,837.46 in restitution, and a three-year term of supervised release. *United States v. Rouse*, No. 3:09-CR-0113-M (N.D. Tex. 2011), *aff'd*, 500 Fed. Appx. 295 (5th Cir. 2012).[1]

In the fifteen grounds raised in this timely section 2255 motion, Petitioner asserts ineffective assistance of counsel at trial, at sentencing, and on appeal. [Doc. 1 at 4-8, 14-18]. The government argues the section 2255 motion lacks merit, and Petitioner has filed a reply. [Doc. 7; Doc. 18].

Prior to filing his reply, the Court denied without prejudice Petitioner's motions for trial transcripts at government expense, for reconsideration of the order denying transcripts, and to compel trial and appellate counsel to release the case file to him. [Doc. 6; Doc. 9; Doc. 15; Doc. 17]. Regarding the latter, the Court concluded that Petitioner had failed to "specify when and how he made his request (whether in writing or by phone) and when counsel refused to comply." [Doc. 15 at 1; Doc. 17 at 2]. In addition, Petitioner had not "provide[d] copies of his letter request(s) and/or counsel's response(s) thereto," and he had "neither identifie[d] the documents that he [sought] from his counsel nor explain[ed] why he need[ed] them." [Doc. 15 at 1; Doc. 17 at 2]. In response to his last request to compel defense counsel to turn over his client file, submitted along with his motion for extension to reply, the Court determined the request was

---

[1] Subsequently, Petitioner pled guilty to failure to appear for sentencing and was sentenced to 60 months' imprisonment, to be served consecutively with the sentence imposed in Case No. 3:09-CR-113-M, and a two-year term of supervised release. *See Untied States v. Rouse,* No. 3:11-CR-346-M-1 (N.D. Tex. Oct. 15, 2012).

again unsupported and conclusory.  [Doc. 17 at 3].  Petitioner had once more failed to explain

how documents from his counsel's files were necessary to rebut specific arguments made by the

government in response to his initial section 2255 motion and brief.  [Doc. 17 at 2-3].

## II. ANALYSIS

After conviction and exhaustion or waiver of the right to direct appeal, the Court

presumes that a petitioner stands fairly and finally convicted.  *See United States v. Cervantes*,

132 F.3d 1106, 1109 (5th Cir. 1998) (citing *United States v. Shaid*, 937 F.2d 228, 231-32 (5th

Cir.  1991) (*en banc*)).  Under section 2255 a petitioner can collaterally challenge his conviction

only on constitutional or jurisdictional grounds.  *See United States v. Willis*, 273 F.3d 592, 595

(5th Cir. 2001).

### Ineffective Assistance of Counsel at Trial (Claim 1)

Petitioner asserts seven claims of ineffective assistance of counsel at trial.  To establish

ineffective assistance of counsel, a petitioner must show that counsel's performance was

deficient and that the deficient performance prejudiced the defense.  *Strickland v. Washington*,

466 U.S. 668, 687-688 (1984).  Failure to establish either deficient performance or prejudice

defeats the claim.  *Id.* at 697.  To prove deficient performance, a petitioner must show that

counsel made errors so serious that he or she was not functioning as the counsel guaranteed by

the Sixth Amendment.  *Id.* at 687.  The proper measure of attorney performance is

reasonableness under prevailing professional norms.  *Id.* at 688.  "Judicial scrutiny of counsel's

performance must be highly deferential."  *Id.* at 689.  There is a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance.  *Id.*  To

prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at

694. In the context of ineffective assistance of counsel at sentencing, the petitioner must

demonstrate that the sentence was increased by the deficient performance of defense counsel.

*Glover v. United States*, 531 U.S. 198, 200, 203-04 (2001).

<u>*Failure to Raise Statute of Limitations Objection* (Issue 1.1)</u>

Claiming the alleged offense conduct ceased before 2004, and that the original indictment

was filed more than five years later, on April 22, 2009 [Crim. Doc. 1], Petitioner contends trial

counsel erred in failing to move to dismiss on statute of limitations grounds.  [Doc. 1 at 14].  He

argues further that "an indictment . . . along with the charged overt acts is not dispositive of a

Statute of Limitations defense," and that the Court's inquiry instead should focus on "when the

Petitioner ceased all criminal conduct."  [Doc. 18 at 2].

Petitioner's arguments lack merit.  To be within the limitations period for conspiracy, the

government must establish "that a conspirator committed an overt act in furtherance of the

conspiracy in the five years before the indictment."  *United States v. Manges*, 110 F.3d 1162,

1169 (5th Cir. 1997) (emphasis added);  *see also United States v. Loe*, 248 F.3d 449, 457 (5th

Cir. 2001) ("overt acts alleged in indictment and proven at trial mark duration of the conspiracy"

for purpose of deciding whether a conspiracy conviction withstands a statute-of-limitations

challenge).  The same applies to mail fraud, where "the government must prove that the

predicate mailing occurred in the five years before the indictment."  *Manges*, 110 F.3d at 1169;

*see also*; 18 U.S.C. § 3282(a) (establishing a five-year limitations period for non-capital

offenses).  Here, the superseding indictment alleges, as to the mail fraud counts, predicate

mailings that occurred on June 25, 2004.  Doc. 51 at 11-12.  It further alleges that the conspiracy

dated from January 2004 until July 2004, and includes overt acts occurring as late as May and

June 2004 -- all within the five-year limitations period. [2]  [Crim. Doc. 51 at 7, 10].

Based on these facts, a motion to dismiss the indictment on statute of limitations grounds would have been meritless.  It is well settled that defense counsel is not required to offer a frivolous motion or objection.  *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) ("[F]ailure to make a frivolous objection does not cause counsel's performance to fall below an objective level of reasonableness.").[3]  Therefore, Petitioner's claim fails.

### *Co-conspirator James Testa's Testimony and Out-of-State Counsel* (Issue 1.2)

Next, Petitioner asserts that counsel failed to properly investigate James Testa, a co-conspirator, thereby depriving Petitioner of the opportunity to impeach the witness at trial.  [Doc. 1 at 14].  Plaintiff's assertion is conclusory and, therefore, insufficient to sustain his claim.

A petitioner who alleges a failure to investigate on the part of his counsel must "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Here, Petitioner does not specify what an investigation would have revealed about Testa, much less how it would affected his trial.  *See United States v. Curtis*, 769 F.3d 271, 276 (5th Cir. 2014) ("A defendant must rely on more than bare allegations about counsel's failure to interview or

---

[2]  For limitations purposes, the superseding indictment is deemed to relate back to the filing date of the original indictment on April 22, 2009.  *See United States v. McMillan*, 600 F.3d 434, 444 (5th Cir. 2010) ("A superseding indictment that is filed while the original indictment is pending will relate back to the original indictment, and therefore also be timely, unless it broadens or substantially amends the charges.").

[3] Petitioner's renewed request for access to trial counsel's file should be rejected for the reasons stated in the Court's prior orders as summarized above.  [*See also* Doc. 17].  Petitioner merely contends that his "'out-of-state counsel' Mr. [Lee] Levinson, prepared legally theorized motions on this subject of Statute of Limitations," that he was unable to review and present to the Court in support of his section 2255 motion.  [Doc. 18 at 3].  However, since the indictment was timely, as previously discussed, the brief would not have advanced Petitioner's limitations argument.

produce a witness and must show that the witness's testimony, if offered, would have been exculpatory."). Moreover, Petitioner does not controvert the government's contention that defense counsel effectively questioned Testa and even impeached him. [Crim. Doc. 158 at 224-233; Crim. Doc. 159 at 5-78]. In his reply, Petitioner urges only that "Testa's perjurious declarations w[ere] done to curry favor with the government's case," and suggests that Testa and Mac Fulbright "conspired to frame Petitioner as the scape goat." [Doc. 18 at 4].

With respect to Testa's allegedly inconsistent testimony at trial, Petitioner contends trial counsel (1) refused to allow his out-of-state lawyer, Lee Levinson, to participate in the trial, (2) failed to file a brief requested by the Court, and (3) neglected to move for a mistrial, seek corrective instructions, or preserve error for appeal. [Doc. 1 at 14]. In his reply, Petitioner adds that the mere fact that Mr. Levinson's brief was not filed addressing "Testa's perjurious declarations . . . proves negligence on [trial counsel's] part." [Doc. 18 at 4].

Petitioner's assertions, however, are refuted by the record. With the Court's permission, Mr. Levinson sat with the trial team to advise and participate in the trial. [Crim. Doc. 157 at 4-5]. In addition, the prosecution and the defense initially agreed to have the Court admonish Testa in front of the jury, and later entered into a stipulation (which was read to the jury) about inconsistencies in Testa's testimony that the jury could consider in evaluating his overall credibility. [Crim. Doc. 159 at 25, 48-50, 120-121; Crim. Doc. 160 at 2, 5-7]. Thus, Petitioner has failed to show how a brief prepared by Mr. Levinson requesting that Testa's testimony be stricken (whether in whole or in part) would have altered the outcome.[4]

---

[4] Petitioner reiterates that he did not attach a copy of Levinson's brief because defense counsel failed to provide him access to his file and the Court denied his request to compel counsel to release the defense file. [Doc. 18 at 4]. Nevertheless, access to the brief would not have advanced this claim as stated above.

*Failure to Investigate, Call Witnesses, and Seek Funds for Expert* (Issues 1.3 and 1.7)

Petitioner asserts counsel rendered ineffective assistance in failing to investigate or call as witnesses Richard Cayce (a representative of the Benson and Associates Law Firm), Everett Myers, (a former IRS agent with purported experience in REITs), Alex Bickley, and four others individuals (identified in his section 2255 motion) who would have testified that "the trust transactions were legal" and that the REIT was a valid business model and an "ordinary trade practice." [Doc. 1 at 14-15]. Petitioner claims that he relied in "good faith" on the advice of the above individuals. [Doc. 18 at 5]. In support, he presents "a written opinion from Attorney Polson." [Doc. 18 at 5-7].[5]

Petitioner has not shown that any of the uncalled witnesses were available and would have testified, and that their testimony would have been favorable. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (to satisfy *Strickland* prejudice based on failure to call a witness, the petitioner must name the witness, demonstrate the witness's availability and willingness to testify, identify the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense). As outlined above, he only identifies the witnesses by name and briefly summarizes the general substance of their combined testimony. [Doc. 1 at 14-15; Doc. 18 at 5-7]. This is insufficient. *See Day*, 566 F.3d at 538 (finding uncalled expert witness's affidavit insufficient because it only countered the expert opinion presented at trial and did not address that he was available to testify at trial, that he would have done so, and that he would have testified in accord with the opinions and conclusions he states in his affidavit). Moreover, it

---

[5] As to the additional individuals, Petitioner only pleads that they "would have included: Ron Brown, who was Myers's partner in the METRO REIT; Jim Blakeman, of the ASPEN REIT; Ron Calloway, Ex banker selling the mortgage bundles; Alex Bickley, legal advisor of the trust; Steve Rouse, office manager and in daily communication with government's witness Mr. Testa; Sidney Lyle, Attorney and more." [Doc. 1 at 15].

is uncertain whether defense counsel would have been able to locate the uncalled witnesses before or during trial.  In fact, during closing argument, defense counsel admitted that he did not know some of the individuals Petitioner now names as potential witnesses, much less where Myers could be found.  [Crim. Doc. 162 at 196, 204, 207].  In addition, Alex Bickley was dead by the time trial commenced, as counsel pointed out during opening argument.  [Crim. Doc. 157 at 128].

Moreover, that the GGREIT was a lawful and proper business model was not an issue at trial.  Rather the prosecution's case turned on whether Petitioner had conspired to commit and had committed securities fraud, mail fraud, and money laundering while managing the REIT in 2004.  Petitioner replies "that questioning regarding . . . whom [sic] drew up the legal instruments of agreements for investors would have brought a reasonable doubt to the jury's verdict."  [Doc. 18 at 7].  Again, based on the evidence presented at trial, Petitioner has failed to demonstrate "a reasonable probability" that the testimony of the uncalled witnesses (assuming they had been located and testified at trial) would have changed the jury's conclusion.  *See Day*, 566 F.3d at 538.  Accordingly, Petitioner fails to satisfy the prejudice showing required for an ineffective assistance claim based on counsel's failure to call a witness.

Likewise, Petitioner has presented only bare allegations of counsel's failure to investigate.  That is insufficient to sustain his claim.  *See United States v. Curtis*, 769 F.3d 271, 276 (5th Cir. 2014) ("To establish [a] failure to investigate claim, [a defendant] must allege with specificity what the investigation would have revealed *and how it would have benefitted him.*") (quoted case omitted, emphasis in original), *cert. denied,* 135 S. Ct. 691 (2014).  Petitioner has not only failed to show with specificity what an investigation would have revealed, but also how it would have altered the outcome of his trial.  *Id.* at 277-278.  He simply argues that "when Eric

Fulbright admitted to falsifying statements, and losing the money, Mr. Mills failed to investigate enough to pursue a line of questioning that would have shown Mr. Rouse was innocent of the alleged losses."[6]   [Doc. 1 at 15].   However, it was undisputed that the investors' statements had been falsified and that the GGREIT's funds were lost.  [Crim. Doc. 159 at 135], 161, 171, 172]. In addition, the issue at trial was not whether Petitioner "was innocent of the alleged losses," but whether he defrauded investors -- after loss of the funds -- by misleading them about their investment or by soliciting additional investors.

With respect to his second attorney, Jens Bakker, Petitioner urges that he "failed to seek additional funds for the expert CPA investigator."  [Doc. 1 at 16].  Petitioner's assertions are again conclusory; he states only that "[t]he results of this expert would have shown misleading statements produced without Mr. Rouse's involvement."  [Doc. 1 at 16].  In his reply, Petitioner adds:

> The CPA investigator would have unravelled that Testa spent monies he wasn't permitted. And, that Testa spent these monies after the fact of his relinquishment as Trustee and business partner of the GGREIT.
>
> Additionally, the CPA investigator would have unearthed the fact that Testa gave back thousands to Bickley in furtherance of the alleged charged conspiracy without Petitioner's knowledge. And also would have shown Testa borrowed $100,000.00 dollars from Petitioner and his father and would have demonstrated that it was never paid back, with exception to $6,000.00 dollars that attorney gave to Petitioner's Dad.  The CPA evidence would have supported a different outcome by refuting Testa's testimony: that Petitioner allegedly committed acts that in reality were made by Testa.

[Doc. 18 at 12-13].   Petitioner's assertion is belied by the record.  Indeed, filed under seal are counsel's motion for addition expert funds, and the Court's order partially granting that request. [Crim. Doc. 23; Crim. Doc. 26].  Moreover, pending before the Court is another related motion

---

[6] Although Eric Fulbright did not testify at trial, his father, Mac Fulbright, did.   [Crim. Doc. 159 at 121, 124-123].

(also filed under seal), in which Bakker avers that the services of a CPA were, in fact, obtained in this case. [Crim. Doc. 59].

Insofar as Petitioner contends trial counsel, Tom Mills, rendered ineffective assistance in failing to hire an expert, his claim fares no better. Mill's decision not to hire or call an expert witness is entitled to deference as reasonable trial strategy. *See Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) (counsel's decision not to hire an expert fell "within realm of trial strategy"). Petitioner has not established that an expert would have testified at trial and that the testimony would have been favorable. *See Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002) ("[T]o demonstrate the requisite Strickland prejudice, [a habeas petitioner] must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.") (quoting *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).

Accordingly, Petitioner's assertions are insufficient to raise a cognizable claim of ineffective assistance of counsel.[7]

### *Counsel's Physical and Mental Impairment (Issue 1.4)*

Next, Petitioner maintains "counsel was physically and mentally incapable of functioning," and that counsel "suffered during the trial from a knee injury and surgery" for which he "was taking pain medication" that "impaired [his] ability to conduct the trial." [Doc. 1 at 15]. He also states that counsel "could not understand many of the questions [he] asked." [Doc. 1 at 15]. These assertions are also conclusory and unsupported. Even if counsel took pain medication during trial, there is no evidence that he was impaired during trial or that his performance was deficient. Contrary to Petitioner's opinions that counsel lacked good command

---

[7] Petitioner reiterates that he does not have access to his counsel's file. [Doc. 18 at 6]. Yet, it is unclear how his counsel's file would have assisted with these claims.

of the facts of the case and that his performance suffered as a result, Doc. 18 at 7-8, the record reveals that counsel ably represented Petitioner during a complex, seven-day, jury trial, and there is nothing to suggest that counsel was not competent.

*Refusal to Permit Petitioner to Testify (Issue 1.5)*

The record contradicts Petitioner's assertion [Doc. 1 at 16] that counsel refused to allow Petitioner to testify.  *See United States v. Mullins,* 315 F.3d 449, 452 (5th Cir. 2002) (a criminal defendant has the right to testify on his own behalf, and while he may waive that right, his attorney cannot waive it over his objection).  At trial, in response to the Court's inquiry, Petitioner assured the Court that counsel had fully advised him of his right to testify, and that he had declined to do so of his own free will.  [Crim. Doc. 162 at 159].  "There is no violation of the right to testify if a defendant acquiesces during trial to his attorney's recommendation that he not testify."  *Jordan v. Harnett,* 34 F.3d 310, 312 (5th Cir. 1994), *vacated on other grounds,* 53 F.3d 94 (5th Cir. 1995).

Nevertheless, apart from his self-serving and unsubstantiated statements, Petitioner offers no proof that that he actually wanted to testify and insisted on doing so despite his waiver; nor has he offered any factual basis from which the court can conclude that his waiver was not knowing and voluntary.  [Doc. 1 at 16; Doc. 18 at 8].  Indeed, after Petitioner waived the right to testify on the record, counsel announced that the defense would rest without presenting any witnesses, Crim. Doc. 162 at 160.  There does not appear in the record any objection by Petitioner to that course of action.

Even assuming counsel was deficient for failing to call him to the stand, Petitioner has

not shown that he was prevented from presenting any aspect of his defense to the jury.[8]   He

presents nothing to meet the high burden of showing that there is a reasonable probability that

the outcome of his trial would have been different if he had testified.   *See Bonvillain v.*

*Blackburn*, 780 F.2d 1248, 1253 (5th Cir.1986) ("[T]he defendant may not simply allege but

must 'affirmatively prove' prejudice.").   He merely states that his own "testimony was the only

reliable testimony to refute Testa perjurious [sic] testimony."   [Doc. 18 at 8].   His pleadings are

completely silent as to the substance of the testimony he would have offered during trial had he

taken the stand on his own behalf.   Thus, he cannot prove that he was prejudiced by defense

counsel's conduct.

### *Refusal to Pursue a Plea Offer* (Issue 1.6)

Next, Petitioner asserts counsel failed to pursue plea negotiations.   [Doc. 1 at 16].   He

claims that he "made it clear that he would be willing to cooperate against the others that were

involved in the illegal activities," but that counsel "never pursued this option with the

government prior to trial."   [Doc. 1 at 16].   However, Petitioner has wholly failed to show that

any plea offer was made and that, even if one had been made, that he would have accepted it.

[Doc. 1 at 16].   In his 2010 *pro se* motion to continue, Petitioner advised the Court, "I have

refused to plead guilty because I am innocent.   I want to have a trial…."   [Crim. Doc. 38 at 1].

Also, as the government notes, Petitioner repeatedly sought to frustrate the criminal proceedings.

In addition to discharging counsel and delaying the retention of new counsel, Petitioner

requested multiple continuances, failed to follow the conditions of pretrial release and, in the

end, failed to appear for sentencing.

---

[8] The Court bypasses the deficient-performance prong because it cannot be reasonable trial strategy for an attorney to not honor his client's decision to exercise his constitutional right to testify.  *Mullins*, 315 F.3d at 456.

In his reply, Petitioner asserts a new claim.  He contends "he received ineffective assistance of counsel at the crucial point when he had to make a decision of whether to enter into plea negotiations or proceed to trial."  [Doc. 18 at 8].  Specifically, he argues that "[w]hen Counsel decided to abandon the agreed upon defenses in lieu of his 'repayment' defense, [counsel] should have advised Petitioner to change his plea to guilty."  [Doc. 18 at 9-10]. Petitioner maintains that if counsel had advised him before trial "that he would not present the statute of limitations defense or the good faith reliance defenses, Petitioner would have the option of (1) finding new counsel that would present the viable defenses, or (2) re-enter plea negotiations with the prosecutor."  [Doc. 18 at 11].

This ground should be stricken because new claims are not permitted in a reply.  [Doc. 3 at 2].  Nevertheless, even if the Court were to consider such claim, it fails as meritless.  *See Missouri v. Frye*, 132 S. Ct. 1399, 1410 (2012) ("a defendant has no right to be offered a plea").

In summary, Petitioner cannot overcome the strong presumption that he received effective assistance of counsel at trial.  Accordingly, grounds 1.1 through 1.7 lack merit.

## Ineffective Assistance of Counsel at Sentencing (Claim 2)

Petitioner's claim that counsel failed to advise him about the sentencing date [Doc. 1 at 16-17] is clearly refuted by the record.  Both the Court and counsel advised Petitioner of the date of the sentencing hearing, and probation officers (both Dallas-based and out-of-state) unsuccessfully sought to communicate with him on numerous occasions.  [Crim. Doc. 164 at 2-5, 5-6].  Moreover, on April 18, 2011, six days after the jury returned its verdict, the Court held a hearing to address Petitioner's conditions of release. The minutes of that hearing reflect that Petitioner would remain free pending sentencing, which was set for July 22, 2011.  [Crim. Doc. 98].  Petitioner's belated assertion in his reply that "he was under the impression that

[sentencing] was continued" is wholly unsupported.  [Doc. 18 at 13].  Because Petitioner had severed all communications with his family, probation officers, and lawyers between his trial and sentencing, he cannot now blame his lawyer for his own failure to appear for sentencing and for the Court's subsequent decision to include a guidelines enhancement for obstruction of justice. Therefore, this claim has no merit.

Petitioner's contentions relating to his subsequent conviction for failing to appear at sentencing, *see United States v. Rouse*, Case No. 3:11-CR-0346-M (N.D. Tex. 2012), are not cognizable in this action.  [Doc. 1 at 17].  He must file a separate section 2255 motion challenging his conviction in that case and counsel's alleged failure to file a notice of appeal as Petitioner claims he had requested him to do.  [Doc. 18 at 13].

### Inability to Participate in his Own Defense Due to Impairment (Claim 3)

Petitioner's contentions that he was unable to fully understand the witnesses' testimony and assist counsel in the cross examination and impeachment of government's witnesses due to his prescription drug use are conclusory and unsubstantiated.  [Doc. 1 at 17].  The same is true of his contention that "[t]he government was aware of [his] ongoing medical treatment and that he was being administered consciousness-altering pain medicines," yet failed to advise the Court so that the trial would be continued.  [Doc. 1 at 17].  Petitioner does not point to anything in the record to support these claims.  On the contrary, the record reveals a number of exchanges between the Court and Petitioner during trial, and none suggest Petitioner's inability to understand or reflect he demonstrated any unusual behavior.  And certainly it was Petitioner's responsibility, rather than the government's, to point out that Petitioner suffered a health condition serious enough to warrant a continuance.  Petitioner's allegations are again self-serving and unsupported; therefore, this claim lacks merit.

## Ineffective Assistance of Counsel on Appeal (Claim 4)

Lastly, Petitioner asserts appellate counsel rendered constitutionally ineffective assistance when he failed to present two issues on direct appeal: (1) that the Court failed to declare a mistrial after a government witness was prevented from testifying further due to perjury; and (2) that the Court calculated the loss amount based on losses that arose before Petitioner knew or should have foreseen the alleged fraud.  [Doc. 1 at 18].

"The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989) (citing *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983)).  Indeed, it is counsel's professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach to maximize the likelihood of success on appeal.  *Jones*, 463 U.S. at 752.  In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal was objectively unreasonable.  *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003).  This reasonableness standard requires an attorney to present "[s]olid, meritorious arguments based on directly controlling precedent." *United States v. Williamson*, 183 F.3d 458, 462-463 (5th Cir. 1999).  A reasonable attorney has an obligation to "research relevant facts and law, or make an informed decision that certain avenues will not be fruitful." *Id.* at 462.

Here, Petitioner has not demonstrated that the issues he desired counsel to present on appeal were clearly stronger than the sentencing issue counsel did pursue on direct appeal – that the court erred in finding that his offense involved sophisticated means under U.S.S.G. § 2B1.1(b)(9)(C).  *See Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective

assistance of counsel be overcome") (cited case omitted).  While Petitioner argues in his reply

that counsel could have presented "stronger issues," he does not elaborate on why the two claims

he proposes were stronger than the one presented.  He merely states without citing "many

opinions" that would support the granting of a mistrial in his case because of "perjurious

testimony."  [Doc. 18 at 15].

Likewise, Petitioner contends the Court erred when it "calculated the loss amount using

an intended grossed up number, as opposed to the actual losses incurred," and argues that "the

loss figure should have been reduced to account for the total amount returned to investors over

the life of the alleged charged conspiracy."  [Doc. 18 at 16].  However, the Presentence Report

(PSR), as adopted by the Court, does credit $249,515.70 that Petitioner and Testa returned to

investors, thereby reducing the intended loss amount of $2,222,547.85 to an actual loss amount

of $1,973,032.15.  [Crim. Doc. 104-1 at 8, PSR ¶ 21].  In any event, as noted in the PSR, even

considering the actual loss to investors, the guideline range remained the same because the

intended and actual loss amounts were both between $1,000,000 and $2,500,000.  *See* U.S.S.G. §

2B1.1(b)(1)(I) (providing for an increase in 16 levels when the loss is between $1,000,000 and

$2,500,000).  [Crim. Doc. 104-1 at 13, PSR ¶ 44].

For the forgoing reasons, appellate counsel's performance did not fall below an objective

standard of reasonableness.  Therefore, Petitioner's last claim fails.[9]

### Evidentiary Hearing Not Required

Throughout his pleadings, Petitioner requests an evidentiary hearing.  [Doc. 18 at 8, 15,

17].  Nevertheless, "[w]hen the files and records of a case make manifest the lack of merit of a

---

[9] Petitioner reiterates that he does not have access to his counsel's file.  [Doc. 18 at 16].  Yet, it is
unclear how his counsel's file would have assisted with the contentions in this last claim.

section 2255 [motion], the trial court is not required to hold an evidentiary hearing." *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. 1981); *see also Cervantes*, 132 F.3d at 1111 (petitioner was not entitled to evidentiary hearing because he did not meet his burden of proof under section 2255).   Accordingly, because Petitioner's claims lack merit, for the reasons stated above, no evidentiary hearing is required in this section 2255 proceeding.

### III.  RECOMMENDATION

For the foregoing reasons, it is recommended that the motion to vacate sentence under 28 U.S.C. § 2255 be **DENIED**.

SIGNED April 8, 2015.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE